UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SIGNATURE CONSULTANTS, INC.,
and JAY L. COHEN,

      Plaintiffs,

v.

STEVEN DROOKER,

      Defendant.

04-CV-12687-RCL

STEVEN DROOKER,

      Counter-Plaintiff,

v.

SIGNATURE CONSULTANTS, INC.,
and JAY L. COHEN,

      Counter-Defendants.

**[PROPOSED] REPLY TO OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL DOCUMENT PRODUCTION**

Plaintiffs Signature Consultants, Inc., and Jay L. Cohen (collectively, "Plaintiffs") file this reply to the Opposition to Plaintiffs' Motion to Compel Document Production filed by Beacon Hill Staffing Group, LLC ("Beacon Hill"), and Andrew Wang ("Wang"). For the reasons that follow and the reasons set forth in Plaintiffs' Motion to Compel, Plaintiffs respectfully request that this Court compel production of all documents required under the subpoena duces tecum of November 11, 2004.

First, Beacon Hill and Wang now claim that they object to all 29 categories of documents for production pursuant to the November 11, 2004 subpoena duces tecum. However, the Rule

45(c)(2)(B) opposition filed by Beacon Hill and Wang on November 23, 2004 specifically objected to only 8 of the document requests (the "Requests") – Requests 7, 8, 12, 20, 21, 22, 24 and 28. The Rule 45(c)(2)(B) opposition did not indicate any basis for objecting to any of the other 21 categories of documents for production. It is only now, in its response to the motion to compel filed in this Court, that Beacon Hill and Wang state that they object to production of those other categories of documents. Significantly, moreover, Beacon Hill and Wang still specifically list their objections to only 11 more of the Requests – Requests 1, 2, 6, 13, 14, 15, 16, 17, 19 and 25. If Beacon Hill and Wang have any basis for objection to the remaining nine Requests, the basis for such objection remains a mystery. (A chart summarizing the Requests and the objections thereto is at pages 6-10 hereof).

Rule 45(c)(2)(B) requires "the recipient of a subpoena to raise **all** objections at once, rather than in staggered batches, so that discovery does not become a 'game.'" In re DG Acquisition Corp., 151 F.3d 75, 81 (2d Cir. 1998) (emphasis added). A "game" is precisely what is going on here. Beacon Hill and Wang filed a Rule 45(c)(2)(B) objection, objecting to only 8 of 29 Requests and then waited to ambush Plaintiffs with the other 21 objections after Plaintiffs filed their motion to compel. Objections not timely raised under Rule 45(c)(2)(B) have been waived and, respectfully, the untimely objections should not be considered by the Court. Accordingly, only the objections to Requests 7, 8, 12, 20, 21, 11, 24 and 28 are now properly before the Court. On this basis alone, the subpoenaed parties should be ordered to produce the remaining documents promptly.

Moreover, Beacon Hill and Wang's blanket objection to all 29 Requests is patently unreasonable. Beacon Hill, while not a party to the Florida action, is a company that is or has been owned (at least in part) and managed by a party to that action, Steven Drooker ("Drooker").

It is Drooker's activities with Beacon Hill that form the essential bases for the primary claims against Drooker in the Florida action – that he breached his duties to Signature Consultants, LLC ("Signature LLC") by causing Beacon Hill to actively and directly compete with Signature LLC. It is frankly inconceivable that, as Beacon Hill and Wang would like this Court to believe, all the documents requested in the subpoena are irrelevant to Plaintiffs' claims against Drooker, especially given the broad meaning of "relevance" applied in the discovery context. *See* Fed. R. Civ. P. 26 advisory committee note; *see, e.g.,* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Cash Today of Texas, Inc. v. Greenberg, 2002 WL 31414138 (D. Del. Oct. 23, 2002). Moreover, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." Klonski v. Mahlab, 156 F.3d 255, 267 (1st Cir. 1998).

Incredibly, Beacon Hill and Wang ignore Plaintiffs' proposed First Amended Complaint in the Florida action in describing the nature of that case and their objections. By motion served December 9, 2004 (which motion remains pending), Plaintiffs sought leave to file their First Amended Complaint, a copy of which is attached hereto as Exhibit A (excluding the exhibits thereto).

In the First Amended Complaint, claims are advanced against Drooker for improperly causing Signature LLC to pay him substantial sums of money as "reimbursement" for "business" expenses of Signature LLC that were, in fact, unrelated to the business of Signature LLC. Clearly, support for this claim would be found in documents indicating that Drooker sought reimbursement for the same expenses from "his wife's company," Beacon Hill. The documents sought by Requests 1 and 2 are highly relevant to this issue.

Underlying Counts 1 and 3 of Plaintiffs' First Amended Complaint is the allegation that Drooker was actively involved in Beacon Hill, which involvement was a breach of his duties to Signature LLC.  The extent of Drooker's involvement with Beacon Hill is the central issue underlying those claims, and information and documentation pertaining to that relationship is extremely relevant.

Contrary to the claim of Beacon Hill and Wang, the fact that Drooker has admitted some involvement with Beacon Hill does not make the documents sought by the subject subpoenas non-discoverable.  Drooker's Answers to Plaintiffs' Request for Admissions show that while he has admitted that he was the sole manager of Beacon Hill (while it was named The Connection Group), he denies being the manager of Beacon Hill after the April 2003 name change from The Connection Group to Beacon Hill. [Drooker's Answers to Plaintiffs' Request for Admissions ¶¶ 12-13].[1]  Drooker also denies now holding an equity interest in Beacon Hill, [Drooker's Answers to Plaintiffs' Request for Admissions ¶ 24], although he admits holding an equity interest in Beacon Hill until the time (March 2004) that the Florida action was filed. [Drooker's Answers to Plaintiffs' Request for Admissions ¶¶ 28-29].  Drooker has not admitted the extent of that equity interest.  Thus, the extent of Drooker's ownership and management activity with Beacon Hill remain directly at issue, and that is precisely what the documents sought in the November 11, 2004 subpoenas will show – how actively Steven Drooker was involved in the operation and management of Beacon Hill from 2000 to the present time.

Furthermore, while documents relating to the ownership and management of Beacon Hill (as per Requests 6 and 13-19), are necessary and significant, they will tell only part of the story. Documents that describe things like the level and frequency of communications between Beacon Hill employees and Drooker (as per Request 25) and expense reports or reimbursement requests

---

[1] Attached as Exhibit F to Beacon Hill's and Wang's Opposition to Plaintiffs' Motion to Compel filed in this Court.

submitted by Drooker (as per Requests 1 and 2) will show Drooker's actual involvement with Beacon Hill and are equally necessary and significant.

Lastly, when a subpoenaed party makes a claim of some type of privilege, in this case that information requested is "confidential and proprietary" in nature, more is required than simply a blanket claim of that privilege. *See* Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enters., 160 F.R.D. 70 (E.D. Pa. 1995); *see also* United States v. International Business Machines Corp., 81 F.R.D. 628, 630 (S.D.N.Y. 1979)(blanket and generalized claim that documents sought are confidential and would cause severe injury insufficient). A party seeking to avoid complying with a subpoena on the basis that it requires disclosure of confidential information "must establish that the information sought is confidential and that its disclosure might be harmful." Composition Roofers Union, 160 F.R.D. at 72. Further, they "must show with specificity that disclosure will work a clearly defined and serious injury" to them. Id. It is only if Beacon Hill and Wang have met that standard that Plaintiffs are required to show a "substantial need" for this discovery. *See* Cash Today, 2002 WL 31414138, *2-3.

Significantly, it should be noted that Beacon Hill and Wang claim only that the documents requested in Requests 6 and 7 are confidential and proprietary. Plaintiffs do not admit that this information is properly considered confidential and proprietary – indeed that is why Plaintiffs phrased their suggested resolution the way they did ("**to the extent** the subpoena duces tecum requests information that may properly considered 'proprietary'"). [Plaintiffs' Memorandum of Law in Support of Motion to Compel at pgs. 2-3]. To date, Beacon Hill and Wang have done nothing more than make blanket and generalized claims that this information is

confidential and proprietary, and have made no showing that disclosure would be harmful – especially given Plaintiffs' offer to enter into a confidentiality agreement.

If, indeed, Beacon Hill and Wang can make the required showing of confidentiality and harm, Plaintiffs have more than demonstrated "substantial need." This information is directly relevant to whether Beacon Hill was, under the direction of Drooker, in fact competing against Signature LLC, both by hiring employees sought by Signature LLC (First Amended Complaint ¶ 6) and by soliciting actual or potential clients of Signature LLC (First Amended Complaint ¶ 7). No information could be more relevant to Plaintiffs' claims that Drooker was breaching his duty to Signature LLC by using Beacon Hill to compete against Signature LLC. If Beacon Hill was (and is) not in fact competing against Signature LLC, that would effectively rebut Plaintiffs' claims. The lengths to which Beacon Hill and Wang have gone to hide this information from Plaintiffs, however, suggest that Plaintiffs' allegations are correct.

As Beacon Hill and Wang are apparently seeking to avoid production of **any** of the documents covered in the subpoena, and not simply asking for the subpoena to be modified to require more limited production, they bear a heavy burden to show that none of the documents requested are properly discoverable. *See* Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 425 (1st Cir. 1961). They cannot meet that burden. For this Court's convenience, the following chart sets out the categories of documents requested in the subpoena duces tecum, whether each Request was properly objected to in the November 23, 2004 Rule 45(c)(2)(B) objections, whether each Request was objected to in the Opposition to Plaintiffs' Motion to Compel, and a brief summary of the relevance of each request:

| Req. No | Summary of Documents Requested | November 23, 2004 Rule 45(c)(2)(B) Objection | Objection in Opposition Motion to Compel | Relevance |
|---|---|---|---|---|
| 1 | Drooker Expense reports submitted to Connection Group and/or Beacon Hill | No | Yes | Drooker relationship to Beacon Hill; whether same expenses reimbursed by Beacon Hill and Signature LLC |
| 2 | Expense reimbursements to Drooker from Beacon Hill | No | Yes | See #1 above |
| 3 | Payments to Drooker from Beacon Hill | No | No | Drooker relationship to Beacon Hill; was Drooker being paid to manage Beacon Hill or profiting from Beacon Hill |
| 4 | Loans or capital contributions to, and/or capitalization of Beacon Hill | No | No | Drooker relationship to Beacon Hill; did Drooker directly or indirectly capitalize or make loans to Beacon Hill |
| 5 | Financial statements of Beacon Hill | No | No | Drooker relationship to Beacon Hill directly or indirectly; extent of Beacon Hill competition with Signature LLC |
| 6 | Organizational structure of Beacon Hill including organizational charts and employee lists | No | Yes | Drooker relationship to Beacon Hill directly or indirectly; extent of Beacon Hill competition with Signature LLC, especially in hiring of employees |
| 7 | Identity of actual or potential clients of Beacon Hill in the finance and accounting staffing field | Yes | Yes | Extent of Beacon Hill competition with Signature LLC |
| 8 | Candidates for employment at Beacon Hill, including documents relating to recruitment, interviewing | Yes | Yes | Drooker relationship to Beacon Hill; did Drooker recruit employees also being recruited by Signature LLC; extent of Beacon Hill competition with Signature LLC, especially in hiring of employees |

| Req. No | Summary of Documents Requested | November 23, 2004 Rule 45(c)(2)(B) Objection | Objection in Opposition Motion to Compel | Relevance |
|---------|-------------------------------|-----------------------------------------------|-------------------------------------------|-----------|
| 9 | Documents relating to the recruitment and/or hiring of Jay Turner | No | No | See #8 above |
| 10 | Documents relating to the recruitment and/or hiring of Peter Gentile | No | No | See #8 above |
| 11 | Documents relating to the recruitment and/or hiring of Andrew Wang | No | No | See #8 above |
| 12 | Documents relating to the retention by Beacon Hill of any attorneys or law | Yes | Yes | Drooker relationship to Beacon Hill; were same law firms hired to represent the competing companies – Beacon Hill and Signature LLC |
| 13 | Ownership of Beacon Hill by individuals or entities | No | Yes | Drooker relationship to Beacon Hill directly or indirectly; the extent of Drooker's or his wife's ownership interest and when and to whom transferred if at all |
| 14 | Members of Beacon Hill | No | Yes | See #13 above |
| 15 | Managers of Beacon Hill | No | Yes | Drooker's relationship to Beacon Hill directly or indirectly; when Drooker or his wife was manager |
| 16 | Officers of Beacon Hill | No | Yes | Drooker relationship to Beacon Hill directly or indirectly; when and if Drooker or his wife was officer |
| 17 | Directors of Beacon Hill | No | Yes | Drooker relationship to Beacon Hill directly or indirectly; when and if Drooker or his wife was Director |
| 18 | Shareholders of Beacon Hill | No | No | Drooker Relationship to Beacon Hill; when and if Drooker was shareholder |

| Req. No | Summary of Documents Requested | November 23, 2004 Rule 45(c)(2)(B) Objection | Objection in Opposition Motion to Compel | Relevance |
|---|---|---|---|---|
| 19 | Documents relating to Drooker's ownership and/or management of Beacon Hill and whether that interest or role changed | No | Yes | Drooker relationship to Beacon Hill |
| 20 | Documents reflecting the identity of any action in which Beacon Hill has been a defendant | Yes | Yes | Drooker relationship to Beacon Hill directly or indirectly; extent of Beacon Hill competition with Signature LLC |
| 21 | Any debt instrument to which Beacon Hill has been a party or any guaranty of Beacon Hill's obligations thereunder | Yes | Yes | Drooker relationship to Beacon Hill directly or indirectly; was Drooker or his wife involved in obtaining financing |
| 22 | Terms of any lease for space occupied by Beacon Hill | Yes | Yes | Drooker relationship to Beacon Hill directly or indirectly; did Drooker or his wife sign any lease |
| 23 | Locations where staffing placements have been made by Beacon Hill in the financing and accounting field | No | No | Extent of Beacon Hill Competition with Signature LLC |
| 24 | Documents relating to telephone calls between Beacon Hill and Drooker | Yes | Yes | Drooker relationship to Beacon Hill; extent of telephone interaction between Drooker and Beacon Hill |
| 25 | Documents reflecting any communications between Beacon Hill and Drooker | No | Yes | Drooker relationship to Beacon Hill; extent of communications between Drooker and Beacon Hill |
| 26 | Documents relating to agreements between Beacon Hill and Signature LLC | No | No | Whether Beacon Hill was properly charged by Signature LLC for work done by Signature LLC |

| Req. No | Summary of Documents Requested | November 23, 2004 Rule 45(c)(2)(B) Objection | Objection in Opposition Motion to Compel | Relevance |
|---|---|---|---|---|
| 27 | Documents reflecting the servicing agreement between Beacon Hill and Signature LLC of April 2001 | No | No | See #26 above |
| 28 | Documents reflecting any communications between Beacon Hill and Signature LLC | Yes | Yes | Drooker relationship to Beacon Hill; also see #26 above |
| 29 | Documents relating to the formation, management, staffing, and financial operating results of Beacon Hill Financial | No | No | Drooker relationship to Beacon Hill; extent of Beacon Hill competition with Signature LLC |

This is not a situation where some totally innocent and disinterested non-party has been subpoenaed to produce documents. Beacon Hill is, or at the least was at the time this action was instituted, a closely held Drooker entity, which Plaintiffs allege was the vehicle by which Drooker improperly competed with Signature LLC. Wang was hired by Drooker to be the CEO of Beacon Hill. Nor is the subpoena duces tecum a fishing expedition. Normal pre-trial pursuit of an identified objective is not a "fishing expedition." *See* Surpitski v. Hughes-Keenan Corp., 362 F.2d 254, 255-56 (1st Cir. 1966)("When the fish is identified, and the question is whether it is in the pond, we know no reason to deny a plaintiff the customary license" for discovery). The subpoena here is a simple attempt to obtain the documents necessary to prove Plaintiffs' case. Beacon Hill's and Wang's opposition to this subpoena is nothing less than an attempt by Drooker to stonewall Plaintiffs from obtaining the relevant documents necessary to prove their

claims against him.  This blatant attempt to circumvent the discovery process should not be tolerated.

## **CONCLUSION**

Accordingly, Plaintiffs Signature Consultants, Inc. and Jay L. Cohen respectfully request that this Honorable Court grant their motion and enter an order compelling Beacon Hill Staffing Group, LLC and Andrew Wang to produce the documents required in the subpoena duces tecum of November 11, 2004.


Dated: January 5, 2005                Respectfully Submitted,

                                      SIGNATURE CONSULTANTS, INC.,
                                      and JAY L. COHEN,

                                      By their attorneys,


                                      _____/s/ Nicholas J. Walsh_____
                                      David A. Bunis (BBO #550570)
                                      Nicholas J. Walsh (BBO #647702)
                                      Dwyer & Collora, LLP
                                      600 Atlantic Avenue
                                      Boston, MA 02210
                                      617-371-1000
                                      617-371-1037 (f)

                                      Larry A. Stumpf, Esq.
                                      Aaron Anthon, Esq.
                                      Black, Srebnick, Kornspan & Stumpf, P.A.
                                      201 S. Biscayne Boulevard, Suite 1300
                                      Miami, Florida 33131
                                      305-371-6421
                                      305-371-6322 (f)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Ft. Lauderdale Division

CASE NO. 04-60464-CIV TORRES/ Dimitrouleas
(Consent Case)

SIGNATURE CONSULTANTS, INC.
and JAY L. COHEN,

      Plaintiffs,

v.

STEVEN DROOKER,

      Defendant.

_____/

STEVEN DROOKER,

      Counter-Plaintiff,

v.

SIGNATURE CONSULTANTS, INC.
AND JAY L. COHEN,

      Counter-Defendants.

_____/

## FIRST AMENDED COMPLAINT

      Plaintiffs/Counter-Defendants Signature Consultants, Inc. ("Signature Inc.") and Jay L. Cohen ("Cohen" or, collectively, "Plaintiffs"), by and through undersigned counsel, file this First Amended Complaint against Defendant Steven Drooker ("Drooker") and allege as follows:

## NATURE OF CASE

      1.  This is a civil action by Jay L. Cohen, as manager of and for the benefit of Signature Consultants, LLC. ("Signature LLC"), and the corporation wholly owned and controlled by him, Signature Inc., seeking to recover the substantial losses sustained  by reason of the breaches by Drooker, the other named manager of Signature LLC, of his duties of loyalty and other duties

owed to Signature LLC and to Signature Inc. with respect to the conduct of the business of Signature LLC.  As detailed below, Drooker is competing with Signature LLC in a core area of Signature LLC's business, has engaged in intentional misconduct, and has engaged in acts that constitute conflicts of interest, all to the detriment of Signature Inc. and Cohen.

2.  The claims of Signature Inc. and Cohen arise under F.S. Chapters 86 (declaratory judgment) and 608 (Limited Liability Companies) and under common law.

## THE PARTIES

3.  Cohen is a resident of Palm Beach County and is a manager of Signature LLC.  Cohen has authority under the Operating Agreement of Signature LLC and Florida law to bring this action for the benefit of Signature LLC.  Cohen is also the sole shareholder and officer of Signature Inc., which is a member of Signature LLC, and owns 50% of the ownership interest in Signature LLC.

4.  Drooker is a resident of Needham, Massachusetts and is a manager of Signature LLC. Drooker owns 25% of the ownership interest in Signature LLC; the Drooker 1997 Irrevocable Trust owns 25% of the ownership interest in Signature LLC.  Drooker regularly engages in business in Florida, through Signature LLC and otherwise.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 and otherwise.

6.  The acts that form the basis for this First Amended Complaint occurred in substantial part in Broward County, Florida.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 and otherwise.

-2-

7.  All conditions precedent to the prosecution of these claims have been performed, have occurred, or have been waived or excused.

## FACTUAL BACKGROUND

8.  Signature LLC was formed in May, 1997 and is in the business of short-term and permanent placement of personnel, primarily in the information technology and finance and accounting ("F&A") fields.

9.  The  governance of Signature LLC is controlled by F.S. Chapter 608 and the Operating Agreement of Signature LLC, dated May 16, 1997 and captioned "Regulations."  A copy of the "Operating Agreement" of Signature LLC is attached hereto as Exhibit "A" and incorporated herein by reference.

10. The principal office of Signature LLC is located in Fort Lauderdale.  Signature LLC also has offices in Orlando; Charlotte; Woburn, Massachusetts; and Reston, Virginia.

11. Pursuant to Article V of the Operating Agreement, Cohen and Drooker are named managers of Signature LLC, with full authority to manage Signature LLC.

12. Although he is named as a manager of Signature LLC in its Operating Agreement, Drooker has admittedly adopted the role of "silent partner" with respect to the management and operation of Signature LLC.  Drooker has completely abdicated his duties as a manager of Signature LLC and has delegated to Cohen the management of Signature LLC. Cohen has exclusively managed Signature LLC for several years.

13. Despite the fact that Drooker has not been involved in the management of Signature LLC for several years, Drooker has caused Signature LLC to pay him $100,000 per year for his management of Signature LLC.

14. Both Cohen and Drooker (sometimes through their respective entities) loaned to Signature LLC substantial sums of start-up capital, all of which has now been repaid by Signature LLC.

## Beacon Hill Competes with Signature LLC

15. In or about early 2000, Signature LLC determined that a key component of its overall business plan for its continued growth and profitability would be to expand into the field of short-term and permanent personnel placement in the F&A field.  Accordingly, Signature LLC formed its F&A division in December, 2000.  Signature LLC hired Keith Kaplan to head its F&A division and placed Kaplan in its Charlotte office.

16. In or about early 2002, during a decline in the information technology placement market, Signature LLC, with the full knowledge of Drooker, embarked on a strategy to further expand its F&A division.

17. Drooker was not only fully aware of the Signature LLC strategy of expanding its F&A division, but Drooker also told Cohen and others within Signature LLC that, because of Drooker's prior experience and capabilities in the F&A placement market, Signature LLC's F&A division should be headquartered in the Woburn, Massachusetts office and be under his direct supervision.

18. To the detriment of Signature LLC, and during the exact same time period that Signature LLC, with Drooker's full knowledge, was attempting to significantly expand its business in the F&A field, Drooker was, in fact, causing a company in which he held an interest, of which his wife is, upon information and belief, the majority owner, and of which Drooker is, or was, the sole manager (Beacon Hill Staffing Group, LLC, "Beacon Hill"), to actively compete with Signature LLC in the F&A personnel placement field.

19. After substantial efforts by Signature LLC to hire a strongly recommended and highly qualified candidate to head the Signature LLC F&A division in the Woburn office, Drooker insisted, in mid-2002, that Signature LLC not hire the subject candidate.

20. Likewise, Drooker refused to allow Signature LLC to hire other qualified candidates to head Signature LLC's F&A division in Woburn.

21. Upon information and belief, Drooker arranged for at least one candidate that had been interviewed by Signature LLC for the F&A position in Woburn to be hired by Beacon Hill, a business described below that competes directly with Signature LLC and in which Drooker has a substantial interest.

22. In mid to late 2003, Drooker caused Beacon Hill to hire yet another person that had been a strong candidate for Signature LLC's F&A division in Woburn.

23. Since its inception, and in spite of Drooker's clandestine efforts to sabotage it, Signature LLC's F&A division has generated revenues well in excess of $1,000,000.

24. In furtherance of his improper and unlawful actions to cause Beacon Hill to directly compete with Signature LLC, Drooker has, among other things:

> a.  caused Beacon Hill to hire, in mid-2002, Andrew Wang (who had previously worked for Drooker at a company owned in substantial part by Drooker) to head Beacon Hill's efforts in the F&A placement field;
>
> b.  caused Beacon Hill to hire, in mid-2003, a number of employees in an effort to expand Beacon Hill's F&A business;
>
> c.  actively concealed Beacon Hill's activities from Cohen and others at Signature LLC; and

    d.  attempted to arrange for Beacon Hill to hire Signature LLC's controller, Layne

       Tharp.

**<u>Other Conflicts</u>**

25. In addition, in April 2001, Drooker caused Signature LLC to enter into a written contract

with Beacon Hill, pursuant to which Signature LLC agreed to do all of the accounting, data

processing, payroll and other administrative functions of Beacon Hill, for an amount to be paid

by Beacon Hill to Signature LLC that was far below the fair market value of the services

performed by Signature LLC for Beacon Hill.   The agreement between Beacon Hill and

Signature LLC was not properly disclosed to, or authorized by, Signature LLC.   Instead, Drooker

assured Cohen and Signature LLC that Beacon Hill was a small secretarial placement service run

by his wife 'to give her something to do and that he would arrange for Signature to be paid a fair

price by Beacon Hill.   From approximately April 2001 until late 2003, Signature LLC performed

these services for Beacon Hill on terms, which were arranged by Drooker, resulting in substantial

losses to Signature LLC and a substantial windfall to Beacon Hill and Drooker.

26. Moreover, in or about early 2001, Drooker caused Signature LLC to enter into a lease

with Wheeling Ave. Realty Trust for office space in the Boston area for Signature LLC.   Drooker

has, upon information and belief, a substantial financial interest in Wheeling Ave. Realty Trust,

and Drooker controls the activities of that trust.   The amount of space leased by Signature LLC,

pursuant to the lease transaction arranged by Drooker is far in excess of the actual needs of

Signature LLC, and the terms of the lease are unfavorable to Signature LLC, resulting in losses

to Signature LLC and improper benefits to Drooker.   The subject lease was not properly

disclosed to, or authorized by, Signature LLC.

27. Prior to 2001, Signature LLC instituted a written policy regarding the reimbursement to employees for business expenses of Signature LLC.  This written policy was updated in August 2001.  A copy of the August 2001 Signature LLC expense reimbursement policy is attached hereto as Exhibit "B" and incorporated herein by reference.  A stated purpose of Signature LLC's written policy regarding reimbursement of employee expenses is to help assure compliance by Signature LLC with applicable laws and IRS regulations regarding the subject matter of the policy.

28. Drooker has continuously violated, and continues to violate, both the written policy of Signature LLC regarding the reimbursement of employee expenses and also requests by Signature LLC's financial personnel that he request reimbursement only for legitimate business expenses, by demanding that Signature LLC pay expenses incurred by him that are wholly unrelated to the business of Signature LLC and by refusing to provide Signature LLC with any documentation of any legitimate Signature LLC business purposes for the expenses for which he demands payment by Signature LLC.  As a result thereof, Drooker has wrongfully received in excess of $95,000, all of which is properly the property of Signature LLC.  Drooker has also acted, and/or has failed to act, in conscious disregard of the risk that Signature LLC will, by his actions, be exposed to significant IRS fines, penalties and/or other liabilities by reason of his actions and/or failures to act.

**Impact on Key Employees of Signature LLC**

29. The material negative impacts of Drooker's improper and unlawful actions described herein upon Signature LLC and Signature Inc. extend far beyond the monetary losses caused thereby; Drooker's actions have literally put at risk the continued viability of Signature LLC.

30. At the time that Signature LLC was formed (May 1997), Drooker insisted that, in order to recruit, retain and provide incentive to key employees, Signature LLC grant to such key employees a "stake" in the long-term financial success (and equity value) of Signature LLC.

31. Accordingly, a significant portion of the benefit package provided by Signature LLC to its key employees has always been the right of these employees, upon the sale or going public of Signature LLC, to receive a portion of the amount received by Signature LLC upon such sale or going public. These rights ("Phantom Stock") have been granted by Signature LLC to its key employees in written employment agreements.

32. The key employees of Signature LLC who hold such Phantom Stock are aware of the improper and unlawful actions (and failures to act) of Drooker set forth herein, and are equally aware that these actions of Drooker have substantially reduced, and continue to further substantially reduce, the profitability and equity value of Signature LLC, and hence the value of their Phantom Stock. As a result, Drooker's improper and unlawful actions have jeopardized, and continue to jeopardize, the ability of Signature LLC to retain its key employees. Several of the key employees of Signature LLC have advised Cohen that they are considering leaving Signature LLC specifically because of Drooker's actions (and inactions), resulting in significant damages to Signature LLC and Signature Inc., and putting at risk the on-going viability of Signature LLC.

## COUNT 1
### (Breach of Duty of Loyalty)

33. Plaintiffs repeat and reallege each allegation in paragraphs 1 through 32 above.

34. Pursuant to F.S. 608.4225(1)(a), the Operating Agreement, and otherwise, Drooker owed, and owes, a duty of loyalty to Signature LLC and to Signature Inc. with respect to Signature LLC.

35. Drooker has breached, and continues to breach, the duty of loyalty owed by Drooker to Signature LLC and Signature Inc. by, among other things, causing Beacon Hill to directly compete with Signature LLC and inhibiting the efforts of Signature LLC , in conscious disregard of the best interests of, and to the detriment and damage of, Signature LLC and Signature Inc..

36. Drooker has received, and continues to receive, improper personal benefits, either directly or indirectly, by causing Beacon Hill, a company in which he holds an interest, to compete with Signature LLC.

37. As a result, Signature LLC and Signature Inc. have sustained damages in an amount to be determined at trial, and presently believed to be in excess of $1,000,000, exclusive of interest and costs.

WHEREFORE, Plaintiffs seek a monetary judgment in their favor and against Drooker in the amount of the damages sustained by them, together with their costs of this action, including attorneys' fees incurred, and such other relief as the Court deems just and proper.

## COUNT 2
### (Breach of Duty of Care)

38. Plaintiffs repeat and reallege each allegation in paragraphs 1 through 32 above.

39. Pursuant to F.S. 608.4225(1)(b), the Operating Agreement, and otherwise, Drooker owed, and owes, a duty of care to Signature LLC and Signature Inc. with respect to Signature LLC.

40. Drooker has breached, and continues to breach, the duty of care owed by Drooker to Signature LLC and Signature Inc. by, among other things, willfully causing Signature LLC to pay him substantial amounts of money, disguised as reimbursement of business expenses or otherwise, to which he is not entitled, to the detriment of Signature LLC.

41. In addition to the amounts referred to in paragraph 40 above, Drooker has received $100,000 per year from Signature LLC, for several years, for his management of Signature LLC while performing no services as a manager of Signature LLC.

42. Drooker has received, and continues to receive, improper personal benefits from these transactions.

43. Drooker's conduct is at best grossly negligent or reckless, and at worst intentional misconduct.

44. As a result, Signature LLC and Signature Inc. have sustained damages in an amount to be determined at trial, and presently believed to be in excess of $100,000, exclusive of interest and costs.

WHEREFORE, Plaintiffs seek a monetary judgment in their favor and against Drooker in the amount of the damages sustained by them, together with their costs of this action, including attorneys' fees incurred, and such other relief as the Court deems just and proper.

## COUNT 3
### (Conflict of Interest – Breach of Obligation of Good Faith and Fair Dealing)

45. Plaintiffs repeat and reallege each allegation in paragraphs 1 through 32 above.

46. Pursuant to F.S. 608.4225, the Operating Agreement, and otherwise, Drooker owed, and owes, to Signature LLC and Signature Inc. the duty to refrain from acting in a manner that either creates a conflict of interest and/or breaches his obligation of good faith and fair dealing with respect to Signature LLC.

47. Drooker has breached, and continues to breach, his obligations to Signature LLC and Signature Inc. to refrain from conflicts of interest with respect to Signature LLC, by causing Signature LLC to provide substantial services to Beacon Hill at below-market cost, by causing

Signature LLC to sign the lease with Wheeling Ave. Realty Trust, and otherwise, in conscious disregard of the best interests of, and to the detriment of, Signature LLC.

48. Drooker has received, and continues to receive, improper personal benefits, either directly or indirectly, from these transactions.

49. As a result, Signature LLC and Signature Inc. have sustained damages in an amount to be determined at trial, and presently believed to be in excess of $250,000, exclusive of interest and costs.

WHEREFORE, Plaintiffs seek a monetary judgment in their favor and against Drooker in the amount of the damages sustained by them, together with their costs of this action, including attorneys' fees incurred, and such other relief as the Court deems just and proper.

Dated: December 9, 2004

Respectfully Submitted,

Black, Srebnick, Kornspan & Stumpf, P.A.
*Attorneys for Plaintiffs*
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel: (305) 371-6421
Fax: (305) 371-6322

By _____
    Larry A. Stumpf, Esq.
    Aaron Anthon, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the *First Amended Complaint* was sent via U.S. Mail this **9**<sup>th</sup> day of December, 2004 to: **James W. Stoll, Esq.**, Brown Rudnick Berlack Israels LLP, One Financial Center, Boston, Massachusetts 02111 and **Todd S. Payne, Esq.**, Zebersky & Payne, LLP, 4000 Hollywood Blvd., Suite 400 North, Hollywood, Florida 33021.

By _____
          Larry A. Stumpf, Esq.
          Aaron Anthon, Esq.